EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
09/15/2015
CT Log Number 527822159

TO:    Traci Tuttle, Senior Legal Specialist
       Akebia Therapeutics, Inc.
       245 First Street, Suite 1100
       Cambridge, MA 02142

*rec'd*
*9/17/15*
*ssuttle*

RE:    **Process Served in Massachusetts**

FOR:   Akebia Therapeutics, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| TITLE OF ACTION: | Anthony Fortunato, Individually and on Behalf All Others Similarly Situated, Pltf. vs. Akebia Therapeutics, Inc., et al., Dfts. |
| DOCUMENT(S) SERVED: | Summons, Proof of Service, Cover Sheet, Complaint, Motion and (Proposed) Order |
| COURT/AGENCY: | Suffolk County Superior Court, MA Case # SUCV201502665BLS1 |
| NATURE OF ACTION: | Violations of the Securities Act - Defendants failed to ensure that the Registration Statement and the materials incorporated therein disclosed material trends and uncertainties that they knew or should have reasonably expected would have a materially adverse impact on Akebia's business |
| ON WHOM PROCESS WAS SERVED: | C T Corporation System, Boston, MA |
| DATE AND HOUR OF SERVICE: | By Process Server on 09/15/2015 at 13:10 |
| JURISDICTION SERVED : | Massachusetts |
| APPEARANCE OR ANSWER DUE: | Within 20 days after service of this summons, exclusive of the day of service |
| ATTORNEY(S) / SENDER(S): | Jason M. Leviton Block & Leviton LLP .1.55 Federal Street, Suite 400 Boston, MA 02110 617-398-5600 |
| ACTION ITEMS: | SOP Papers with Transmittal, via  Fed Ex 2 Day , 781339376839 |
| SIGNED: ADDRESS: | C T Corporation System 155 Federal St Ste 700 Boston, MA 02110-1727 |
| TELEPHONE: | 617-757-6404 |

Page 1 of  1 / DR

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION



No. _SUCV2015-02665-BLS1_

Anthony Fortunado, _Individually and on Behalf of All Others Similarly Situated_ , Plaintiff(s)

v.

_Akebia Therapeutics, Inc., et al._ , Defendant(s)

## SUMMONS

_Akebia Therapeutics, Inc._
_c/o CT Corp_

To the above-named Defendant:

You are hereby summoned and required to serve upon _Jason M. Leviton, Esq. of Block & Leviton LLP_ plaintiff's attorney, whose address is _155 Federal St., Suite 400, Boston, MA 02110_ , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Judith Fabricant, Esquire, at Boston, the _11th_ day of _September_ , in the year of our Lord two thousand _fifteen_

_Michael Joseph Donovan_

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
     (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV. P. 1 12M — 1/15

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. ——————————

————————————————— , Plff(s).

v.

————————————————— , Deft(s).

### SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

**N.B. TO PROCESS SERVER:—**
PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

9/15 , 2015

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ——————, 201——, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

Dated:—————————, 201——

—————————————————

—————————————————

| CIVIL ACTION COVER SHEET | DOCKET NO(S) **B.L.S.** **15-2665** | Trial Court Of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|

| PLAINTIFF(S) ANTHONY FORTUNATO, Individually and on Behalf of All Others Similarly Situated, | DEFENDANT(S) AKEBIA THERAPEUTICS, INC., JOHN P. BUTLER, JASON A. AMELLO, MUNEER A. SATTER, CAMPBELL MURRAY, M.D., JACK NIELSEN, ANUPAM DALAL, M.D., GIOVANNI FERRARA, KIM DUEHOLM, PH.D, DUANE NASH, M.D., MORGAN STANLEY & CO. LLC, CREDIT SUISSE SECURITIES (USA) LLC, UBS SECURITIES LLC, and NOMURA SECURITIES INTERNATIONAL, |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Board of Bar Overseers number Jason M. Leviton (BBO #678331) Block & Leviton LLP, 155 Federal Street, Ste. 400, Boston, MA 02110, (617) 398-5600 | ATTORNEY (if known) |
|---|---|

Origin Code Original Complaint

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE? *
    BA3                (B) X Yes ( ) No

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

Plaintiff brings this class action on behalf of the public stockholders of Akebia Therapeutics, Inc. against Akebia Therapeutics, certain Akebia senior executives and directors, and the investment banks that acted as underwriters for the March 20, 2014 Initial Public Offering of Akebia Therapeutics. Plaintiff claims violations of sections 11, 12(a)(2) and 15 of the Securities Act of 1933 resulting from materially untrue statements of fact or the omission of material facts which rendered the Registration Statement misleading.

RECEIVED

SEP 0 3 2015

SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods." Signature of Attorney of Record
DATE: 9/3/15

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK COUNTY, ss.                    SUPERIOR COURT DEPARTMENT
                                      OF THE TRIAL COURT

| | |
|---|---|
| ANTHONY FORTUNATO, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>v.<br><br>AKEBIA THERAPEUTICS, INC., JOHN P. BUTLER, JASON A. AMELLO, MUNEER A. SATTER, CAMPBELL MURRAY, M.D. JACK NIELSEN, ANUPAM DALAL, M.D., GIOVANNI FERRARA, KIM DUEHOLM, PH.D., DUANE NASH, M.D., MORGAN STANLEY & CO. LLC, CREDIT SUISSE SECURITIES (USA) LLC, UBS SECURITIES LLC, and NOMURA SECURITIES INTERNATIONAL,<br><br>                    Defendants. | **15-2665**<br><br>Civil Action No. _____<br><br><br><br><br>**JURY TRIAL DEMANDED**<br><br>RECEIVED<br>SEP 0 3 2015<br>SUPERIOR COURT - CIVIL<br>MICHAEL JOSEPH DONOVAN<br>CLERK / MAGISTRATE |

## CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Anthony Fortunato ("Fortunato" or "Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings made by Akebia Therapeutics, Inc. ("Akebia" or the "Company"), analyst and media reports, and other commentary analysis concerning Akebia. Plaintiff's investigation into the matters alleged herein is continuing and many relevant facts are known only to, or are exclusively within the custody and control of, the Defendants. Plaintiff believes that substantial additional evidentiary

support will exist for the allegations set forth herein after a reasonable opportunity for formal discovery.

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action under §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") against (1) Akebia; (2) certain of Akebia's senior executives and directors who signed the Registration Statement (as defined below) in connection with the Company's March 20, 2014 Initial Public Offering (the "Offering"), and (3) each of the investment banks that acted as underwriters for the Offering.   Plaintiff alleges that the Registration Statement (and Prospectus incorporated therein) contained materially untrue statements of material fact or omitted to state material facts required to be stated in order to make the statements in the Registration Statement not misleading.   Defendants are each strictly liable for such misstatements and omissions therefrom (subject only, in the case of the Individual and Underwriter Defendants, to their ability to establish a "due diligence" affirmative defense), and are so liable in their capacities as signers of the Registration Statement and/or as an issuer, statutory seller, offeror and/or underwriter of the shares sold pursuant to the Offering.   For all of the claims stated herein, Plaintiff expressly disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

2.      Defendant Akebia is a biopharmaceutical company that focuses on the development and commercialization of proprietary therapeutics based on hypoxia inducible factor ("HIF") biology for patients with kidney disease.   Akebia's lead product candidate is AKB-6548, an oral therapy which has completed a Phase 2b study for the treatment of anemia related to chronic kidney disease ("CKD") in non-dialysis patients, as well as tested in a Phase 2 study for the treatment of anemia in patients undergoing dialysis.   AKB-6548 stabilizes HIF

2

which is a transcription factor that modulates gene expression involved with red blood cell ("RBC") production in response to oxygen level changes. AKB-6548 essentially mimics the body's response to increases in altitude. The Company said the drug may be able to raise hemoglobin levels and RBC count, as well as improve iron mobilization to treat CKD-related anemia.

3.     On July 24, 2013, in a press release entitled "Akebia Therapeutics Announces Initiation of Phase 2b Trial of Oral Anemia Candidate," the Company announced that it had dosed the first patient in the Phase 2b trial of AKB-6548 for the treatment of anemia associated with CKD. The trial was to enroll a total of 200 patients and evaluate them over a 140-day period, meaning that the patients who began the trial in July 24, 2013 finished their treatment by approximately, December 24, 2013. Thus, upon information and belief, Akebia had completed a substantial amount of its Phase 2b trial by the time of its Initial Public Offering ("IPO"), which occurred approximately eight months after the Company began dosing patients, on March 20, 2014.

4.     In the IPO, the Company and the underwriters sold 5,882,353 shares of common stock at an initial public offering price of $17.00 per share. Defendants in this action consist of Akebia, Akebia executives and directors who signed the Registration Statement, and the underwriters to the Offering (collectively, the "Defendants").

5.     In violation of the Securities Act, Defendants negligently issued untrue statements of material facts and omitted to state material facts required to be stated from the Registration Statement and incorporated Offering Materials that the Company filed with the SEC in support of the Offering. Defendants are strictly liable for any and all material untrue statements or omissions in the Offering Materials. Furthermore, because this case involves a Registration

3

Statement, Defendants also had an independent, affirmative duty to provide adequate disclosures about adverse conditions, risks, and uncertainties. *See* Item 303 of SEC Reg. S-K, 17 C.F.R. §229.303(a)(3)(ii) (requiring that the materials incorporated in a Registration Statement disclose all "known trends or uncertainties" reasonably expected to have a material unfavorable impact on the Company's operations). Thus, Defendants had an affirmative duty to ensure that the Registration Statement and the materials incorporated therein disclosed material trends and uncertainties that they knew or should have reasonably expected would have a materially adverse impact on Akebia's business. Defendants failed to fulfill this obligation. Specifically, unbeknownst to investors, the Registration Statement's representations were materially untrue, inaccurate, misleading, and/or incomplete because they failed to disclose, *inter alia*, poor safety results among patients taking Akebia's experimental anemia drug AKB-6548 in the Company's Phase 2b study, particularly, a high incidence of news of serious adverse events ("SAEs"). An SAE is any undesirable medical experience in human drug trials. SAEs include any dose that results in death, is life-threatening, requires hospitalization, results in persistent or significant disability/incapacity, is a congenital anomaly/birth defect, or requires intervention to prevent permanent impairment or damage. Accordingly, the price of the Company's shares was artificially and materially inflated at the time of the Offering. Unfortunately for investors who purchased the Company's shares pursuant or traceable to the Offering, however, the truth concerning the nature and extent of the problems facing the Company did not begin to emerge until the Offering was complete.

6.     The truth was revealed on October 27, 2014, when the Company reported its results for the Phase 2b trial. Results were deemed positive with respect to AKB-6548's efficacy. The results showed that 54.9% of patients who received AKB-6548 met the primary

4

endpoint versus 10.3% in the placebo group.  However, the incidence of SAEs in the active treatment group was 23.9% compared to 15.3% for the placebo group, raising concerns about the safety of the drug.

7.    Market participants reacted strongly to the evidence of heightened safety risk associated with AKB-6548.  For example, on the same day, UBS analyst, Matt Roden, Ph.D., stated "Akebia reported no baseline imbalances that could explain differences seen in SAE's" and that "we need more information to assess the safety profile, since there is an imbalance in serious adverse events (SAE's) and a death that is possibly related to drug."

8.    On this news, shares of Akebia fell $5.75, or over 29%, to close at $13.97 on October 27, 2014.  As a result of the materially untrue and inaccurate statements and/or omissions in the Registration Statement, the value of Akebia common stock was artificially inflated.  The stock has plummeted by over 50% since its IPO Offering.  As of September 2, 2015, the last trading day before this complaint was filed, the Company's shares closed at $7.53 per share.  For all of the claims stated herein, Plaintiff expressly excludes any allegation that could be construed as alleging fraud or intentional or reckless misconduct.  Plaintiff's claims are based solely on claims of strict liability under the Securities Act.  By this action, Plaintiff, on behalf of himself and the other Class members who also acquired the Company's shares pursuant or traceable to the Offering, now seeks to obtain a recovery for the damages he has suffered as a result of Defendants' violations of the Securities Act, as alleged herein.

## JURISDICTION AND VENUE

9.    This Court has original jurisdiction pursuant to Mass. Gen. Laws Ann. Ch. 212, §3 and Section 22 of the federal Securities Act, 15 U.S.C. §77v.  The action is for money damages and there is no reasonable likelihood that recovery by the plaintiff class will be less than or equal

to $25,000. In addition, Defendant's principal place of business is located in the Commonwealth of Massachusetts, and many of the Defendants have offices in Massachusetts.

10.     This action is not removable. The claims alleged herein arise under §§11, 12(a)(2), and 15 of the Securities Act. *See* 15 U.S.C. §§77k, 77l(a)(2), and 77o. Section 22 of the Securities Act, 15 U.S.C. §77v, expressly states that "[e]xcept as provided in section 16(c), no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United States." Section 16(c) refers to "covered class actions brought in any State court involving a covered security, as set forth in subsection (b);" and subsection (b) of Section 16 in turn includes within its scope only covered class actions "based upon the statutory or common law of any State or subdivision thereof." *See* 15 U.S.C. §77p. This is an action asserting only federal law claims. Thus, this action is not removable to federal court.

11.     This Court has personal jurisdiction over each of the Defendants, because they are either citizens of the Commonwealth of Massachusetts and/or the claims and allegations asserted herein arise from conduct and actions taken by the Defendants which occurred within the Commonwealth of Massachusetts, including the operations of Akebia and various Board meetings, such that due process of law will not be offended by this Court's exercise of personal jurisdiction over each of the Defendants. *See* Mass. Gen. Laws Ann. Ch. 223 A, §3.

12.     Moreover, pursuant to Superior Court Administrative Directive No. 09-1, Plaintiff is seeking admission into the Business Litigation Section of the Massachusetts Superior Court based on the fact that the litigation involves claims relating to liability of officers and directors of a publicly traded company headquartered in the Commonwealth.

13.     Venue is proper pursuant to Mass. Gen. Laws Ch. 223, §§1, 8  because many of the Defendants have places of business in Middlesex County, Akebia has its principal place of

6

business located within Middlesex County, and numerous actions relating to the claims at issue in this action occurred within this Court's venue, including the preparation and dissemination of the materially inaccurate, misleading and incomplete Registration Statement and Prospectus (which were prepared by Defendants, or with their participation, acquiescence, encouragement, cooperation, and/or assistance) occurred in whole or in substantial part in this county.

## PARTIES

### A.   Plaintiff

14.   Plaintiff Fortunato purchased shares of the Company's common stock pursuant and/or traceable to the untrue and misleading Registration Statement and was damaged thereby. Between the date of the IPO and the filing of this complaint, Fortunato has purchased 20 shares at $24 on April 30, 2014; sold 10 shares on June 20, 2014 at $29.90; purchased 10 share on June 24, 2014 at $29.11; purchased 10 shares on June 30, 2014 at $29.07; purchased 15 shares on July 15, 2014 at $25.24; purchased 20 shares on July 30, 2014 at $23.47; purchased 20 shares on August 8, 2014 at $21.30; purchased 45 shares on January 12, 2015 at $11.20; purchased 30 shares on March 20, 2015 at $12.93; purchased 10 shares on March 24, 2015 at $11.54 and purchased 60 shares on June 2, 2015 at $7.93.

### B.   Defendants

15.   Defendant Akebia is a biopharmaceutical company that focuses on the development and commercialization of proprietary therapeutics based on HIF biology for patients with kidney disease. Its lead product candidate is AKB-6548, an oral therapy which has completed a Phase 2b study for the treatment of anemia related to chronic kidney disease in non-dialysis patients, as well as tested in a Phase 2 study for the treatment of anemia in patients undergoing dialysis. The Company was founded in 2007 and is headquartered in Cambridge,

7

Massachusetts. Its shares are listed and trade on the NASDAQ under the ticker symbol "AKBA."

16.    Defendant John P. Butler ("Butler") was, at all relevant times, the Chief Executive Officer ("CEO"), President, and director of the Company. Defendant Butler signed or authorized the signing of the Registration Statement.

17.    Defendant Jason A. Amello ("Amello") was, at all relevant times, Senior Vice President, Chief Financial Officer ("CFO") and Treasurer (Principal Financial Officer and Principal Accounting Officer).   Defendant Amello signed or authorized the signing of the Registration Statement.

18.    Defendant Muneer A. Satter ("Satter") was, at all relevant times, a director of the Company. Defendant Satter signed or authorized the signing of the Registration Statement.

19.    Defendant Campell Murray, M.D. ("Murray") was, at all relevant times, a director of the Company.   Defendant Murray signed or authorized the signing of the Registration Statement.

20.    Defendant Jack Nielsen ("Nielsen") was, at all relevant times, a director of the Company. Defendant Nielsen signed or authorized the signing of the Registration Statement.

21.    Defendant Anupam Dalal, M.D. ("Dalal") was, at all relevant times, a director of the Company. Defendant Dalal signed or authorized the signing of the Registration Statement.

22.    Defendant Giovanni Ferrara ("Ferrara") was, at all relevant times, a director of the Company. Defendant Ferrara signed or authorized the signing of the Registration Statement.

23.    Defendant Kim Dueholm, Ph.D. ("Dueholm") was, at all relevant times, a director of the Company.   Defendant Dueholm signed or authorized the signing of the Registration Statement.

24.     Defendant Duane Nash, M.D. ("Nash") was, at all relevant times, a director of the Company. Defendant Nash signed or authorized the signing of the Registration Statement.

25.     Defendants Butler, Amello, Satter, Murray, Nielsen, Dalal, Ferrara, Dueholm, and Nash are collectively referred to herein as the "Individual Defendants."

26.     The Individual Defendants each participated in the preparation of and signed (or authorized the signing of) the Registration Statement. Defendant Akebia and the Individual Defendants who signed (or authorized the signing of) the Registration Statements are strictly liable for the materially untrue and misleading statements incorporated into the Registration Statement. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Akebia's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.

27.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was an underwriter for the Offering. In the IPO, Morgan Stanley agreed to purchase 2,132,353 Akebia shares exclusive of the over-allotment option. Morgan Stanley acted as joint book-running manager in the Offering.

28.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") was an underwriter for the Offering. In the IPO, Credit Suisse agreed to purchase 2,132,353 Akebia shares exclusive of the over-allotment option. Credit Suisse acted as joint book-running manager in the Offering.

29.     Defendant UBS Securities LLC ("UBS") was an underwriter for theOffering. In the IPO, UBS agreed to purchase 1,176,471 Akebia shares exclusive of the over-allotment option. UBS acted as joint book-running manager in the Offering.

30.     Defendant Nomura Securities International, Inc. ("Nomura") was an underwriter for the Offering. In the IPO, Nomura agreed to purchase 441,176 Akebia shares exclusive of the over-allotment option. Nomura acted as a co-manager for the Offering.

31.     Defendants Morgan Stanley, Credit Suisse, UBS and Nomura are referred to collectively as the "Underwriter Defendants." The Underwriter Defendants each served as a financial advisor for and assisted in the preparation and dissemination of the Company's materially untrue and misleading Registration Statement and Prospectus.

32.     The Underwriter Defendants are primarily investment banking houses which specialize, *inter alia*, in underwriting public offerings of securities. As the underwriters of the Offering, the Underwriter Defendants earned lucrative underwriting fees as a result of their participation in the Offering.

33.     In addition, the Underwriter Defendants met with potential investors and presented highly favorable but materially incorrect and/or materially misleading information about the Company, its business, products, plans, and financial prospects, and/or omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

34.     Representatives of the Underwriter Defendants also assisted the Company and the Individual Defendants in planning the Offering. They also purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of the Company, an undertaking known as a "due diligence" investigation. During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning the Company's business, financial condition, products, plans, and prospects.

35.     In addition to having unlimited access to internal corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to the Company's lawyers, management, directors, and top executives to determine: (i) the strategy to best accomplish the Offering; (ii) the terms of the Offering, including the price at which the Company's common stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about the Company would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and the Company's management and top executives, at a minimum, the Underwriter Defendants were negligent in not knowing of the Company's undisclosed existing problems and plans, and the materially untrue statements and omissions contained in the Registration Statement as detailed herein.

36.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and to be declared effective in connection with offers and sales of the Company's shares pursuant and/or traceable to the Offering and relevant offering materials, including to Plaintiff and the Class.

37.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the untrue and misleading statements in the Offering's Registration Statement and Prospectus. The Underwriter Defendants' negligent due diligence investigations was a substantial factor leading to the harm complained of herein.

11

## SUBSTANTIVE ALLEGATIONS

I.    **Akebia and Its Primary Product, AKB-6548**

38.    Defendant Akebia is a biopharmaceutical company that focuses on the development and commercialization of proprietary therapeutics based on HIF biology for patients with kidney disease.

39.    Akebia's lead product candidate is AKB-6548, an oral therapy for the treatment of anemia related to chronic kidney disease. AKB-6548 is designed to stabilize HIF2α, a critical regulator of RBC production and iron absorption. By working in this manner, AKB-6548 achieves a very controlled and natural stimulation of RBC production that is similar to the effect of modest increases in altitude.

40.    Since its inception in 2007, Akebia has devoted substantially all of its resources to its development efforts relating to AKB-6548, including preparing for and conducting clinical studies of AKB-6548, providing general and administrative support for these operations and protecting its intellectual property. Akebia does not have any products approved for sale and has not generated any revenue from product sales.

41.    On July 24, 2013, Akebia announced that it had dosed the first patient in the Phase 2b trial of AKB-6548 for the treatment of anemia associated with CKD. Akebia stated that "[t]he Phase 2b randomized, double-blind, placebo-controlled study is designed to evaluate the safety and efficacy of AKB-6548 for the treatment of anemia associated with CKD."

42.    There were to be 200 patients in the Phase 2b trial and Akebia planned to evaluate patients over a 140-day period. Thus, the patients that began dosing on July 24, 2013 completed their evaluation period by December 24, 2013. Moreover, according the Company, as of February 13, 2014, the Company enrolled over 70% of the 200 patients in the Phase 2b trial.

Therefore, on information and belief, Akebia completed a substantial amount of the Phase 2b trial by March 20, 2014.

43.    On February 18, 2014, Akebia announced the filing of a Registration Statement on Form S-1 with the SEC for a proposed initial public offering of shares of its common stock, as amended on March 3, 2014 ("Amendment No. 1"), March 7, 2014 ("Amendment No. 2") and ("Amendment No. 3"), and March 17, 2014 ("Amendment No. 4") (collectively, the "Amendments"). On March 19, 2014, the Registration Statement was declared effective with the SEC.

44.    On March 20, 2014, Akebia announced the pricing of its IPO of 5,882,353 shares of common stock at an IPO price of $17.00 per share. Underwriter Defendants Morgan Stanley, Credit Suisse and UBS acted as joint book-running managers and Nomura acted as a co-manager for the Offering.

45.    On March 21, 2014, the Company issued SEC Form 424B5, a Prospectus Supplement for the sale of 5,882,353 shares of Akebia stock as previously announced in the Company's press release of March 20, 2014.

46.    On March 26, 2014, Akebia announced the closing of its IPO of 6,762,000 shares of common stock at an IPO price of $17.00 per share. This included the exercise in full by the Underwriter Defendants of their option to purchase 879,647 shares of common stock. The aggregate net proceeds to Akebia, after underwriting discounts and commissions and estimated offering expenses, were approximately $106.9 million.

## II.    The Offering and the Company's Materially Untrue and Incomplete Registration Statement and Prospectus

47.    The IPO Registration Statement materially omitted material information regarding the poor safety results among patients that participated in the Phase 2B study, particularly, a high

13

incidence of SAEs. Therefore, the IPO Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

48.     The Registration Statement emphasized the prior, positive safety results for AKB-6548, stating that AKB-6548 had been studied in eight clinical trials across four separate patient populations: healthy volunteers and patients with CKD stages 3, 4, and 5 (non-dialysis). In each clinical trial, no drug-related SAEs were reported, and dosing was well-tolerated. The Registration Statement states the following in pertinent part:

> To date, AKB-6548 has been studied in eight clinical trials across four separate patient populations: healthy volunteers and patients with CKD stages 3, 4 and 5 (non-dialysis). Our largest study was a Phase 2a trial in 91 patients with anemia secondary to CKD, which showed significantly increased hemoglobin levels among subjects taking AKB-6548 compared to baseline in a dose-dependent manner across all treatment arms (p < 0.0001). No drug-related serious adverse events were reported, and dosing was well-tolerated. In addition, AKB-6548 was also shown to stabilize the iron supply to the bone marrow while improving hemoglobin production.

> * * *

> There were eight SAEs in separate subjects which were all considered unrelated to the study drug by the study investigators; seven in the AKB-6548 groups (9.7%) and one in the placebo group (5.3%). These included fluid overload (placebo patient), gastroenteritis, hypoglycemic event, dizziness, triple vessel coronary artery disease with non-ST elevation myocardial infarction, hypertensive crisis, ventricular pacemaker lead replacement, and azotemia (uremia). One subject, who we believe received only three or four doses of study drug, died after being hospitalized for uremia. The subject's death occurred several days into her hospitalization following an in-hospital procedure when she developed sustained ventricular tachycardia and cardiac arrest. The subject's death was not considered to be related to AKB-6548. All other subjects recovered.

> The principal investigator at the enrolling site for the subject experiencing the SAE is responsible for determining whether a SAE is related to AKB-6548 or not. If the principal investigator is able to determine an alternative reason for the cause of the SAE, then the SAE is generally considered to be unrelated. Upon

continuing review of all SAEs from the various clinical studies, a pattern of SAEs may emerge to indicate relatedness. To date, no such pattern has emerged in our AKB-6548 trials.

\* \* \*

*Differentiated safety profile.* AKB-6548's novel mechanism of action and dosing profile offer the opportunity to potentially avoid the black box label ascribed to injectable rESAs. ***In our recently completed Phase 2a study, no drug-related serious adverse events were reported. Dosing was well-tolerated*** and there was no evidence of undesirable vascular response.

\* \* \*

***Throughout these studies, AKB-6548 was generally well tolerated. There were no serious adverse events, or SAEs, and treatment emergent adverse events, or TEAEs, were limited in number and duration.***

[Emphasis added.]

49.     The above statements were materially untrue and misleading and omitted material information because they failed to disclose that the Company was in the midst of a Phase 2b trial indicating that AKB-6548 had heightened safety risks. The Phase 2b trial commenced on July 24, 2013 and the initial patients had already completed their 140-day evaluation period months prior to the IPO. On information and belief, a substantial amount of the Phase 2b trial was completed by March 20, 2014, yet the Registration Statement negligently failed to disclose the negative safety data being generated by the trial.

50.     In addition, pursuant to Item 303 of Regulation S-K (17 C.F.R. §229.303), and the SEC's related interpretive releases thereto, including any known trends, issuers are required to disclose events or uncertainties that have had or are reasonably likely to cause the registrant's financial information not to be indicative of future operating results. Any adverse events and/or uncertainties associated with the safety of AK-6548 were reasonably likely to have a material

impact on Akebia's profitability, and, therefore, were required to be (but were not) disclosed in the Registration Statement under Item 303.

## THE TRUTH BEGINS TO EMERGE

51.    Unfortunately for investors, however, it was not until approximately seven months after the Offering that the investors first began to learn the truth concerning the safety of AKB-6548 at the time of the Offering.

52.    On October 27, 2014, the Company issued a press release entitled "Akebia Announces Positive Top-Line Results from its Phase 2b Study of AKB-6548 in Non-Dialysis Patients with Anemia Related to Chronic Kidney Disease." The Company reported positive efficacy, results showed that 54.9% of patients who received AKB-6548 met the primary endpoint versus 10.3% in the placebo group. However, the incidence of SAEs in the active treatment group was 23.9% compared to 15.3% for the placebo group.

53.    On October 27, 2014, UBS analyst, Matt Roden, Ph.D., stated "Akebia reported no baseline imbalances that could explain differences seen in SAE's" and that "we need more information to assess the safety profile, since there is an imbalance in serious adverse events (SAE's) and a death that is possibly related to drug." On this news, shares of Akebia shares fell $5.75, or over 29%, to close at $13.97 on October 27, 2014.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

54.    Plaintiff brings this action as a class action on behalf of a Class consisting of all those who purchased the Company's common stock pursuant or traceable to the Company's Offering and Registration Statement and who were damaged thereby (the "Class"). Excluded from the Class are Defendants; the officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

16

55. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the proposed Class. The members of the proposed Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

56. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct.

57. Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

58. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the federal securities laws were violated by Defendants' acts as alleged herein;

    b. whether the Prospectus and Registration Statement contained materially false and misleading statements and omissions; and

    c. to what extent Plaintiff and members of the Class have sustained damages and the proper measure of damages.

59. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**FIRST CLAIM**
**Violations of §11 of the Securities Act**
**Against All Defendants**

60.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.    This Claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against each of the Defendants.

62.    The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

63.    The Company is the issuer of the securities purchased by Plaintiff and the Class. As such, the Company is strictly liable for the materially untrue statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

64.    The Individual Defendants each signed the Registration Statement. As such, each is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense.  The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement, and to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the document contained all facts required to be

18

stated therein. In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material fact necessary to make the statements made therein not misleading. Accordingly, the Individual Defendants are liable to Plaintiff and the Class.

65.     The Underwriter Defendants each served as underwriters in connection with the Offering. As such, each is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense. These Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. They had a duty to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the documents contained all facts required to be stated therein. In the exercise of reasonable care, the Underwriter Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material facts necessary to make the statements made therein not misleading. Accordingly, each of the Underwriter Defendants is liable to Plaintiff and the Class.

66.     By reasons of the conduct herein alleged, each Defendant violated §11 of the Securities Act.

67.     Plaintiff acquired the Company's common stock pursuant or traceable to the Registration Statement, and without knowledge of the untruths and/or omissions alleged herein.

Plaintiff sustained damages, and the price of the Company's common stock declined substantially due to material misstatements in the Registration Statement.

68.     This claim was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

69.     By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under §11 as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

**SECOND CLAIM**
**Violations of §12(a)(2) of the Securities Act**
**Against All Defendants**

70.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

71.     Defendants were sellers, offerors, and/or solicitors of purchasers of the Company's securities offered pursuant to the Offering. Defendants issued, caused to be issued, and signed the Registration Statement in connection with the Offering. The Registration Statement was used to induce investors, such as Plaintiff and the other members of the Class, to purchase the Company's shares.

72.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein. Defendants' acts of solicitation included participating in the preparation of the materially untrue and incomplete Registration Statement.

73.     As set forth more specifically above, the Registration Statement contained untrue statements of material facts and omitted to state material facts necessary in order to make the statements, in light of circumstances in which they were made, not misleading.

20

74.     Plaintiff and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Registration Statement.

75.     The Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading. None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects. Had they done so, these Defendants could have known of the material misstatements and omissions alleged herein.

76.     This claim was brought within one year after discovery of the untrue statements and omissions in the Registration Statement and within three years after the Company's shares were sold to the Class in connection with the Offering.

## THIRD CLAIM
### For Violation of §15 of the Securities Act
### Against the Individual Defendants

77.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

78.     The Individual Defendants were controlling persons of the Company within the meaning of §15 of the Securities Act. By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants invest in, individually and collectively, had the power to influence, and exercised the same, over the Company to cause it to engage in the conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act.

21

79.     By reason of such wrongful conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act.  As a direct and proximate result of the wrongful conduct, Class members suffered damages in connection with their purchases of the Company's shares.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.      Declaring this action to be a proper class action and certifying Plaintiff as Class representative;

B.      Awarding Plaintiff and the other members of the Class compensatory damages;

C.      Awarding Plaintiff and the other members of the Class rescission on their §12(a)(2) claims;

D.      Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

E.      Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: September 3, 2015                 **BLOCK & LEVITON LLP**

Jason M. Leviton (BBO# 678331 )
Steven P. Harte (BBO# 667948)
155 Federal Street, Suite 400
Boston, MA 02110
Telephone: 617-398-5600
Facsimile: 617-507-6020
Email: Jason@blockesq.com
         Steve@blockesq.com

22

Joseph P. Guglielmo (BBO# 671410)
Thomas L. Laughlin
Joseph V. Halloran
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile: 212-223-6334
Email: jguglielmo@scott-scott.com
        tlaughlin@scott-scott.com
        jhalloran@scott-scott.com

David R. Scott
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432
Email: david.scott@scott-scott.com

*Attorneys for Plaintiff Anthony Fortunato*

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK COUNTY, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

---

ANTHONY FORTUNATO, Individually and
on Behalf of All Others Similarly Situated,

Plaintiff,

v.

AKEBIA THERAPEUTICS, INC., JOHN P.
BUTLER, JASON A. AMELLO, MUNEER A.
SATTER, CAMPBELL MURRAY, M.D.
JACK NIELSEN, ANUPAM DALAL, M.D.,
GIOVANNI FERRARA, KIM DUEHOLM,
PH.D., DUANE NASH, M.D., MORGAN
STANLEY & CO. LLC, CREDIT SUISSE
SECURITIES (USA) LLC, UBS SECURITIES
LLC, and NOMURA SECURITIES
INTERNATIONAL,

Defendants.

Civil Action No. 15-2665-BLS

---

## MOTION AND [PROPOSED] ORDER
## FOR APPOINTMENT OF SPECIAL PROCESS SERVER

In accordance with the provisions of Rule 4(c) of the Massachusetts Rules of Civil

Procedure, the undersigned hereby moves this Court for the appointment of James M. Desrosiers

of The Constable Offices of Desrosiers & Associates, LLC, of Boston, Massachusetts, and/or

any of his employees or associates as special process server in the above-entitled case. The

undersigned swears that to the best of his knowledge and belief that the person to be appointed

process server is a constable who is experienced in the service of process, is 18 years of age or

over and is not a party to this action.

Dated:  September 11, 2015

BLOCK & LEVITON LLP,

Jason M. Leviton (BBO# 678331)
Steven P. Harte (BBO# 667948)
Bradley J. Vettraino (BBO# 691834)
155 Federal Street, Suite 400
Boston, MA 02110
Telephone: 617-398-5600
Facsimile:  617-507-6020
Email: Jason@blockesq.com
          Steve@blockesq.com

Joseph P. Guglielmo (BBO# 671410)
Thomas L. Laughlin
Joseph V. Halloran
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile:  212-223-6334
Email: jguglielmo@scott-scott.com
          tlaughlin@scott-scott.com
          jhalloran@scott-scott.com

David R. Scott
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile:  860-537-4432
Email: david.scott@scott-scott.com

*Attorneys for Plaintiff Anthony Fortunato*